¶ 1.
Dooley, J.
Defendant Kent Richland appeals his conviction for enabling the consumption of alcohol by a minor in violation of 7 V.S.A. § 658(a)(2), following a jury trial in Chittenden Superior Court, and the probation conditions imposed by the court at sentencing. We reverse the trial court’s holding with respect to the knowledge requirement of § 658(a)(2) and remand for a new trial. Because of our disposition on the conviction, we do not reach defendant’s challenges to the probation conditions.
¶ 2. The testimony presented at trial demonstrates the following basic facts. On May 10, 2013, defendant received a text message from a sixteen-year-old minor asking defendant to purchase alcohol for him. Defendant agreed but could not find his identification and instead arranged for a friend to purchase the alcohol. Later that day, defendant’s friend purchased a bottle of gin for the minor at a local beverage store. On the morning of May 11, the minor was found dead near his family home after crashing his all-terrain vehicle (ATV) while intoxicated.
¶ 3. Defendant was charged with enabling the consumption of alcohol by a minor under 7 V.S.A. § 658(a)(2), which states: “No person shall . . . knowingly enable the consumption of malt or vinous beverages or spirituous liquors by a person under the age *404 of 21.”[1] At trial, the court instructed the jury on the elements of § 658(a)(2), informing the jurors that the State must prove defendant knowingly enabled the victim to consume alcohol but need not prove defendant knew the victim was under the age of twenty-one. Defendant objected to the instruction on the age element. In overruling defendant’s objection, the court stated:
Knowingly is an adverb and it modifies enabled. It does not affect knowledge of the age of the individual. . . . [I]t’s always been generally accepted that certainly the sale of alcohol is a strict liability offense. And the individual does not have to know that the individual being furnished with a sale of the alcohol was under the age of 21 and I don’t know any reason why [the two statutory provisions] should be any different.
¶ 4. Defendant moved for a judgment of acquittal pursuant to Vermont Rule of Criminal Procedure 29, arguing that the evidence was insufficient for a reasonable jury to conclude that he had knowledge of the minor’s age or that he created a direct and immediate opportunity for the minor to consume alcohol. The court denied defendant’s motion, finding the evidence sufficient to sustain a jury verdict of guilty and reiterating its statement that the age element is strict liability and does not require proof of knowledge. Defendant was found guilty after a short jury deliberation and sentenced to twelve-to-twenty-four-months incarceration, all suspended except for six months to serve.[2] This appeal followed.
¶ 5. Defendant raises four issues on appeal: (1) the trial court committed reversible error in instructing the jury that § 658(a)(2) *405 does not require knowledge of the minor’s age; (2) the evidence presented at trial was insufficient to prove defendant enabled the minor’s alcohol consumption; (3) the court’s imposition of probation during the pendency of this appeal creates a harsher, indeterminate term of probation, thereby penalizing defendant for exercising his right to appeal; and (4) the standard form probation conditions are invalid. We agree with defendant on the first issue and hold that § 658(a)(2) requires the State to prove defendant had knowledge of the minor’s age and that the court’s error in instructing the jury to the contrary was not harmless. Because we reverse and remand for a new trial, we need not address the remaining three issues.
¶ 6. Our inquiry here starts with the language of § 658(a)(2). The issue of whether the age element of § 658(a)(2) requires knowledge is a matter of statutory interpretation, which we review de novo. Stowell v. Action Moving & Storage, Inc., 2007 VT 46, ¶ 9, 182 Vt. 98, 933 A.2d 1128; see State v. Dann, 167 Vt. 119, 132, 702 A.2d 105, 113 (1997) (stating that “the determination of the required mental element is a question of statutory construction”). Our goal in interpreting a statute is to carry out the intent of the Legislature. State v. LeBlanc, 171 Vt. 88, 91, 759 A.2d 991, 993 (2000); see State v. Messier, 145 Vt. 622, 627-28, 497 A.2d 740, 743 (1985) (explaining that task of defining crimes generally belongs to Legislature). We start with the plain language of the statute, and if the meaning is clear, we will enforce it according to its terms. LeBlanc, 171 Vt. at 91, 759 A.2d at 993. In doing so, “we ‘presume that all language in a statute was drafted advisedly, and that the plain ordinary meaning of the language used was intended.’ ” Id. (quoting Committee to Save Bishop’s House, Inc. v. Medical Center Hospital of Vermont, Inc., 137 Vt. 142, 153, 400 A.2d 1015, 1021 (1979)). As we explain below, based on a plain reading of the statute, we conclude that § 658(a)(2) requires that a defendant know that the person enabled to consume alcoholic is a minor.
¶ 7. The plain terms of § 658(a)(2) include a scienter element: knowledge. The Legislature explicitly imposed criminal liability on individuals who “knowingly enable the consumption of malt or vinous beverages or spirituous liquors by a person under the age of 21.” 7 V.S.A. § 658(a)(2) (emphasis added). The core of the dispute, however, is not the presence of the scienter element *406 but whether that element attaches to the clause “by a person under the age of 21.” The State argues that “knowingly” modifies only the term “enable,” the term it immediately precedes, while defendant contends that “knowingly” is read to modify all successive elements of the statute, up to and including the age requirement.
¶ 8. When construing a criminal statute, we presume that the Legislature knows how to incorporate a scienter element. See Kerr, 143 Vt. at 605, 470 A.2d at 674; see also LeBlanc, 171 Vt. at 92, 759 A.2d at 993 (explaining that Legislature knows how to incorporate terms into statute and that, when such terms are omitted, we presume Legislature intended to do so). The corollary to this assertion is that when the Legislature expressly includes an element of scienter, we presume that it is aware of its effect on the other elements of the statute. Cf. Nelson v. Town of St. Johnsbury Selectboard, 2015 VT 5, ¶ 15, 198 Vt. 277, 115 A.3d 423 (stating that Legislature was cognizant of meaning of “for cause” and its effect on other terms in town manager statute).
¶ 9. The effect the scienter element has on the other successive elements of a criminal statute is determined by a well-established rule of statutory construction, one that has been codified by the American Law Institute (ALI) and endorsed by both the judicial and legislative branches of state and federal governments,[3] including this Court. ALI’s Model Penal Code *407 provides: “When the law defining an offense prescribes the kind of culpability that is sufficient for the commission of an offense, without distinguishing among the material elements thereof, such provision shall apply to all the material elements of the offense, unless a contrary purpose plainly appears.” Model Penal Code § 2.02(4).[4] Applying this method of construction to § 658(a)(2), we would distribute the term “knowingly” to all successive elements of the statute, including the age of the minor. This method of construction aligns with our own presumption in favor of requiring an element of mens rea in criminal statutes. See State v. Stanislaw, 153 Vt. 517, 523, 573 A.2d 286, 290 (1990) (explaining that “the existence of a mens rea is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence!,] . . . [and] unless expressly provided otherwise by the legislature, ... a crime is composed of an act and an intent, which concur at a point in time” (emphasis added) (quotations and citations omitted)); see also State v. Beayon, 158 Vt. 133, 135, 605 A.2d 527, 528 (1992) (observing that we often have “implied guilty intent as an element when none was expressly provided by the statute”).
¶ 10. The United States Supreme Court adopted a similar distributive rule in Flores-Figueroa v. United States, 556 U.S. 646 (2009), in which it analyzed the scienter element in 18 U.S.C. § 1028A(a)(l), which criminalizes “knowingly transferfing], possess *408 [ing], or us[ing], without lawful authority, a means of identification of another person.” Id. at 647. In holding that “knowingly” attaches to all elements of the statute, the Court explained that when a phrase in a criminal statute introduces the elements of a crime with the word “knowingly,” it is “ordinarily read ... as applying that word to each element,” id. at 652 (quotation omitted), because “[a]s a matter of ordinary English grammar,” such a reading “seems natural,” id. at 650. The Court further explained:
In ordinary English, where a transitive verb has an object, listeners in most contexts assume that an adverb (such as knowingly) that modifies the transitive verb tells the listener how the subject performed the entire action, including the object as set forth in the sentence. Thus, if a bank official says, ‘Smith knowingly transferred the funds to his brother’s account,’ we would normally understand the bank official’s statement as telling us that Smith knew the account was his brother’s. Nor would it matter if the bank official said, ‘Smith knowingly transferred the funds to the account of his brother.’ In either instance, if the bank official later told us that Smith did not know the account belonged to Smith’s brother, we should be surprised.
Id. at 650-51.
¶ 11. We adopted the Supreme Court’s Flores-Figueroa rationale in State v. Amsden, 2013 VT 51, where we reviewed 13 V.S.A. § 1304, which criminalizes cruelty to children under the age of ten. The pertinent statutory provision imposes a penalty on anyone “who willfully . . . neglects or . . . exposes such child ... in a manner ... to endanger his or her health.” 13 V.S.A. § 1304. The State argued that the term “willfully” modifies only “neglects” and “exposes” but not “in a manner ... to endanger his or her health.” Amsden, 2013 VT 51, ¶¶ 32-33. In rejecting the State’s argument, we applied the rules of English grammatical construction, as explained in Flores-Figueroa, to conclude that the term “willfully” applies to all elements of the statute. Id. ¶ 33. We held that the proscribed act is not merely neglecting or exposing the child but doing so “in a manner to endanger the child’s health or welfare” — a single unitary act. Id. “To trigger criminal liability,” we further held, “the mental state that must accompany this *409 unitary act is willfulness.” Id. (citing Flores-Figueroa, 556 U.S. at 650). Construing the enabling statute in a similar manner requires us to hold that the term “knowingly” applies to the single unitary act of enabling the consumption of alcohol by a person under the age of twenty-one.
¶ 12. We acknowledge that this rule of statutory construction is not without its limitations. As several of the above-cited authorities indicate, the presumption that mens rea attaches to all elements of a statute may be rebutted by a showing of clear legislative intent to the contrary. See supra, n.3. In reviewing the legislative history, we do not necessarily expect to find an express statement from the Legislature regarding its intent to impose strict liability under § 658(a)(2). We can, however, look to the legislative history for evidence that the statute’s purpose will be frustrated if the State is required to prove knowledge of the minor’s age. For example, in United States v. Washington, 743 F.3d 938 (4th Cir. 2014), the court considered the effect of the term “knowingly” on the victim’s age in 18 U.S.C. § 2423(a), the federal human trafficking statute. Section 2423(a) imposes criminal liability upon any person “who knowingly transports an individual who has not attained the age of 18 years” for the purposes of engaging in criminal sexual activity. Turning to the legislative history, the court noted that “Congress enacted the provision to provide minors with special protection against sexual exploitation,” Washington, 743 F.3d at 943, and intended “ ‘to protect young persons who are transported for illicit purposes, and not transporters who remain ignorant of the age of those whom they transport.’ ” Id. (quoting United States v. Jones, 471 F.3d 535, 540 (4th Cir. 2006)). The court concluded that, viewed in this context, the purpose of § 2423(a) was to make the victim’s young age an aggravating factor and “not to make the provision protecting minors more difficult to prove than its more general counterpart.” Id.
¶ 13. Turning to the legislative history of § 658(a)(2), we do not find such a clear intent. As the State explained in its brief to this Court, the Legislature enacted the statute as part of a comprehensive scheme to combat drunk driving. The Legislature’s findings indicate a general concern for public safety; cite statistics on incidents of driving under the influence (DUI), alcohol-related traffic fatalities, and the relationship between DUI and other *410 criminal offenses; highlight the limited success of traditional rehabilitation and deterrence methods; and emphasize the need for more aggressive DUI enforcement. 1997, No. 117 (Adj. Sess.), § 1. The Legislature noted that “a disproportionate number of DUI offenders are young persons” — age thirty-five and under — but its findings say nothing that helps us decide the scope of a mental element, the question before us. Id. While it will always be true that a strict liability crime is easier to enforce than one requiring proof of a mental element, there must be some acknowledgment by the Legislature that requiring the State to prove knowledge of age will directly impede the purpose of the statute.[5] Unlike the age provision in the human trafficking statute at issue in Washington, the age requirement here is not a penalty-enhancing aggravating factor to a general crime.
¶ 14. We are similarly unpersuaded by the State’s argument that the Legislature’s intent with respect to the scienter requirement of § 658(a)(2) is demonstrated by a proposed amendment to the statute made by the Vermont House of Representatives. The House proposed the following language to the bill, as passed in the Senate:
(a) A person, licensee or otherwise, shall not:
(1) sell, furnish or knowingly enable, facilitate, assist or permit the sale or furnishing of malt or vinous beverages or spirituous liquors to a person under the age of 21; or
(2) knowingly enable, facilitate, assist or permit the consumption of malt or vinous beverages or spirituous liquors by a person under the age of 21.
*411 H. Jour. 376, 1997-1998 Gen. Assem., Bien. Sess. (Vt. Feb. 3, 1998). Essentially, the House added the term “knowingly enable” into each provision of the statute. The version was approved by the House, but in response to a report of the Committee of Conference, the “knowingly enable” language was removed from subsection (a)(1) and the version was recommended that was eventually enacted into law. H. Jour. 1902, 1997-1998 Gen. Assem., Bien. Sess. (Vt. Apr. 21, 1998).
¶ 15. The State argues that the House, by inserting the terms “knowingly enable, facilitate, assist or permit” into § 658(a)(1) — a statute whose language long had been understood as imposing strict liability — clearly did not intend for the mental element to modify anything other than “enable, facilitate, assist or permit.” Therefore, as the State argues, because of the parallel structure of the two statutes, as proposed, the House also clearly did not intend for the term “knowingly” in § 658(a)(2) to modify any terms other than “enable, facilitate, assist or permit.” The State further contends that when the statute was amended to its current form, the conference committee merely “streamlined” the language, but the substance and intent remained the same.
¶ 16. In our view, the State’s argument has two deficiencies it cannot overcome. The version of the bill voted on by the House of Representatives contained two provisions in subsection (a). In the first provision, the term “knowingly enable” was inserted within the preexisting language. Its placement in the middle of the sentence had no impact on the preexisting elements “sell” or “furnish” such as to change selling or furnishing from a strict liability offense to one requiring mens rea, a point the State and the dissent overlook. Importantly, the first provision contained the exact same interpretation question as the second provision, whether the inserted mental element applied only to enabling, facilitating, assisting, or permitting or also to the age of the person who received the alcoholic beverage.[6] Nothing about the placement of the word “knowingly” in the sentence, or the fact that it was inserted in a sentence that otherwise contained a strict liability offense, indicates that the mental element did not extend to the age of the person receiving the alcoholic beverage. On this *412 point, the logic of the State’s argument is flawed. These arguments are unpersuasive.
¶ 17. Second, we cannot now speculate as to why the House initially created a crime involving knowingly enabling, facilitating, assisting, or permitting the selling or furnishing of alcoholic beverages to a person under twenty-one years of age, the subject of proposed § 658(a)(1), or why the conference committee did not accept that creation. We emphasize that it takes the concurrence of both chambers to enact legislation, and even if we could accept the logic of the State’s argument, there is no evidence that the Senate ever concurred in that logic. Creating legislative intent from a proposed and rejected amendment to a bill is an exercise in unreliable speculation. See Munson v. City of S. Burlington, 162 Vt. 506, 510, 648 A.2d 867, 870 (1994) (stating that Legislature’s rejection of statutory amendment is not indicative of its intent and such “inference is based on speculation, not on sound principles of construction”).
¶ 18. We also reject the State’s — and the trial court’s — rationale that because § 658 traditionally had been construed as a strict liability statute, both provisions must still be read in the same manner. We do not dispute the trial court’s conclusion that even though § 658 was reenacted, Kerr remains good law in its holding that the selling or furnishing of alcohol to a minor is a strict liability offense. But we fail to see how Kerr controls the question in front of us. If anything, the fact that the Legislature amended § 658 to include a provision on enabling the consumption of alcohol that contains a scienter element signals the Legislature’s awareness that it was creating a separate and distinct statutory provision not to be construed in the same manner as its strict liability counterpart. See Doe v. Vt. Office of Health Access, 2012 VT 15A, ¶ 26, 191 Vt. 517, 54 A.3d 474 (presuming that when Legislature amends statute it intends to change its meaning).
¶ 19. The State’s remaining arguments center on its assertion that § 658(a)(2) is silent as to the mens rea requirement and that, because of this silence, we must look to several factors to determine legislative intent. See State v. Bourn, 2012 VT 71, ¶ 10, 192 Vt. 270, 58 A.3d 236 (“When the Legislature is silent as to the mens rea required for a particular offense, this Court will not simply assume that the statute creates a strict liability offense, but will try to determine the intent of the Legislature.”) (quota *413 tions omitted); State v. Searles, 159 Vt. 525, 528, 621 A.2d 1281, 1283 (1993) (stating that we consider several factors in determining Legislature’s intent to impose strict liability crime when statute is silent, including severity of punishment, seriousness of harm to public, defendant’s opportunity to ascertain true facts, difficulty of prosecution, and number of prosecutions expected). Section 658(a)(2) is not silent in this regard — the statute explicitly contains a mental element. As discussed above, the construction rule of Amsden controls — not the Searles factors.
¶ 20. The dissent suggests that we have “ignore[d] the special context of this particular statute in favor of an inflexible reading of the Flore s-Figueroa. presumption.” Post, ¶ 28. To the contrary, our discussion above indicates that we did consider the “special context” of § 658(a)(2) and found nothing to rebut the presumption of mens rea. As we explained, the legislative findings support only general concerns about drunk driving, and the history of amendments to the statute provides, at best, ground for speculation about the legislative intent. Furthermore, despite the dissent’s protestations that the legislative history “strongly suggest[s]” the Legislature intended the age element to be strict liability, post, ¶ 37, it provides no additional support beyond what we already have discussed. The basis for the dissent’s position essentially is that nothing in the legislative history indicates the Legislature intended for the scienter element to extend to the age element. But our goal is not to prove the Legislature intended such a result, but to look for evidence that rebuts the presumption, against strict liability. And the contrary intent must be “expressly provided.” Stanislaw, 153 Vt. at 523, 573 A.2d at 290. Because the dissent cites no specific legislative findings to indicate a concern about underage drinking, the bulk of its analysis focuses on the House’s proposed amendments and the conference committee’s recommendations in response to the amendments. Post, ¶¶ 31-325. As we discussed above, any intent derived from these actions is mere speculation, and such speculation is very shaky ground on which to rest the interpretation of the scienter element of a criminal statute.
¶21. We hold that the term “knowingly” modifies the age element of § 658(a)(2) and that therefore the trial court erred in instructing the jury that the State was not required to prove defendant’s knowledge that the person he enabled to consume an alcoholic beverage was a minor. The final issue we must resolve is *414 whether the trial court’s jury instruction error was harmless. As we explain below, we hold that it was not.
¶ 22. Our decision in State v. Jackowski, 2006 VT 119, informs our discussion here on harmless error. The harmless error standard we articulated in Jackowski requires “a belief that the error was harmless beyond a reasonable doubt.” Id. ¶ 8. There, we considered an erroneous jury instruction and its impact on the final decision. We discussed our longstanding precedent holding that an error is not harmless when an element of a crime is removed from a jury’s consideration and the State is improperly relieved of its burden to prove each element of the crime beyond a reasonable doubt. Id.
¶ 23. We acknowledge that there may be times that the court’s failure to instruct the jury on the intent element of a crime is harmless. We recognized one such circumstance in State v. Trombley, 174 Vt. 459, 807 A.2d 400 (2002) (mem.). There, the court failed to instruct the jury on the issue of intent. We nonetheless concluded that, because the defendant did not contest the intent at trial, the error was harmless beyond a reasonable doubt. Id. at 462-63, 807 A.2d at 405. As in Trombley, the State here contends that the knowledge element was not at issue, arguing that the evidence establishes “beyond a reasonable doubt” that defendant knew the minor’s age. In support of this, the State cites to unrebutted testimony that defendant referred to him as “this kid” and that defendant’s friend told defendant he did not want to buy alcohol “for a minor.” While this circumstantial evidence was available to the jury to find the requisite knowledge, we cannot say beyond a reasonable doubt that the jury would find defendant had knowledge. Unlike in Trombley, defendant here never expressly admitted that he knew the minor’s age. It is not our role as an appellate panel to weigh the credibility of the evidence, see Chase v. Bowen, 2008 VT 12, ¶ 15, 183 Vt. 187, 945 A.2d 901, and, because the jury, as factfinder, was not required to weigh the evidence of defendant’s knowledge of the minor’s age, the error was not harmless.

Reversed and remanded, for a new trial consistent with this decision,.

 Section 658(a)(1), the companion to § 658(a)(2), provides: “No person shall . . . sell or furnish malt or vinous beverages or spirituous liquors to a person under the age of 21.” Although § 658(a)(1) is not at issue here, an earlier identical version has been construed as a strict liability statute — i.e., having no mental element — see State v. Kerr, 143 Vt. 597, 605, 470 A.2d 670, 674 (1983), and was relied upon by the trial court for its rationale that § 658(a)(2) does not require the State to prove that defendant knew that minor was under the age of twenty-one. The State similarly invokes § 658(a)(1) in its arguments to this Court.

 The court also imposed a $2000 fine, 240 hours of community service, thirty days of service on a work crew, and several standard form probation conditions. The court informed defendant that his incarceration would be stayed pending an appeal to this Court, but emphasized that defendant would remain on probation during the pendency of the appeal.

 See, e.g., Colo. Rev. Stat. Ann. § 18-1-503(4) (“When a statute defining an offense prescribes as an element thereof a specified culpable mental state, that mental state is deemed to apply to every element of the offense unless an intent to limit its application clearly appears.”); State v. Denby, 668 A.2d 682, 685 (Conn. 1995) (explaining that “[w]hen one and only one [term designating a mental state] appears in a statute defining an offense, it is presumed to apply to every element of the offense unless an intent to limit its application clearly appears”) (quotations omitted); Scott v. State, 757 S.E.2d 106, 107 (Ga. 2014) (explaining that “a criminal statute that introduces the elements of a crime with the word ‘knowingly’ is ordinarily construed as applying that word to each element of the offense”); Commonwealth v. Daley, 977 N.E.2d 536, 540 (Mass. 2012) (explaining that “knowingly” modifies all subsequent elements of criminal statute); Or. Rev. Stat. Ann. § 161.115(1) (“If a statute defining an offense prescribes a culpable mental state but does not specify the element to which it applies, the prescribed culpable mental state applies to each material element of the offense that necessarily requires a culpable mental state.”); Commonwealth v. Scolieri, 813 A.2d 672, 678 (Pa. 2002) (explaining that “where the [legislature] sets forth the mens tea requirement for a crime with several elements, the requirement generally applies *407 to all elements”); cf. Rambin v. Allstate Ins. Co., 852 N.W.2d 34, 40 (Mich. 2014) (recognizing that “presumption in favor of a criminal intent or mens rea requirement applies to each element of a statutory crime”).

 Although the Vermont Legislature has not enacted all parts of the Model Penal Code, it has drawn from it in drafting a number of our criminal statutes, see State v. Jackowski, 2006 VT 119, ¶ 5, 181 Vt. 73, 915 A.2d 767 (noting that aggravated assault statute was amended to adopt Model Penal Code’s approach to mens rea); State v. Fanger, 164 Vt. 48, 52-53, 665 A.2d 36, 38 (1995) (noting that criminal trespass statute was based on Model Penal Code and applying the Code’s standard for knowledge under such statute), and, on occasion, we have looked to it in determining the level of culpability in a particular offense, see State v. Amsden, 2013 VT 51, ¶ 23, 194 Vt. 128, 75 A.3d 612 (defining “recklessly”); Dann, 167 Vt. at 132, 702 A.2d at 113 (defining “knowingly”); State v. Sargent, 156 Vt. 463, 466, 594 A.2d 401, 402 (1991) (defining “purposefully” and “knowingly”). Although this has not been true in all cases, see, e.g., State v. Congress, 2014 VT 129, 198 Vt. 241, 114 A.3d 1128 (declining to apply individual sections of Model Penal Code to homicide statute because our homicide statute does not track that of Model Penal Code), we note this only to demonstrate this Court’s and the Legislature’s familiarity with the Code.

 The State also recounted comments from Governor Howard Dean during his inaugural address on the problems of alcohol abuse and drunk driving among youth, and quoted floor statements about young victims of alcohol-related traffic fatalities. When pressed at oral argument about the relevance of these statements, the State responded that the legislative history was meant to “set the stage” and add “a little color to paint the context of why the statute was enacted.” The State conceded that it was not “hanging [its] hat on quoted floor statements.” While these statements may indicate a general concern about underage drinking and driving, they are far from demonstrating clear legislative intent to rebut the presumption of mens rea.

 It is, of course, possible that “knowingly” modifies “enable” but not “facilitate, assist or permit,” but it would be difficult to find a reason for differentiating among those elements.